FILED
NOV 07 2022 AW
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ramona LaRue, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | 1:22-cv-06177 |
| The Entities and Individuals Identified in Annex A, | ) | Judge Joan H. Lefkow |
| | ) | Magistrate Judge Jeffrey Cummings |
| | ) | RANDOM |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Ramona LaRue, Inc. ("Ramona LaRue" or "Plaintiff") brings an action against the Defendants identified in Annex A to the Complaint ("Defendants") for copyright infringement. As alleged in the Complaint, Defendants have engaged in the widespread marketing, advertising, offering for sale, and sale of products on the internet in connection with Ramona LaRue's federally registered copyrights in order to deceive consumers into believing the sellers' products are genuine Ramona LaRue products. Defendants solicit and make these sales on online marketplaces and on internet websites that portray Defendants' products as Ramona LaRue's genuine product in order to cause confusion among the public and to illicitly profit from that confusion. In short, Defendants have run sophisticated infringement operations seeking to exploit Plaintiff without regard for anything except generating profits and no matter the damage done to Plaintiff. Plaintiff has brought this action to protect the goodwill represented by its valuable copyright registrations and to protect its customers and potential customers from

1

unwittingly purchasing inferior, infringing products sold by Defendants under or in connection with Plaintiff's intellectual property.

Ramona LaRue is deeply concerned that upon learning of the Complaint in this matter, Defendants will attempt to conceal their identities and activities. Unless an *ex parte* temporary restraining order is issued, Defendants are likely to take actions which will make it extraordinarily difficult, if not impossible, for Ramona LaRue to obtain the remedies it seeks in this suit. For example, Defendants are likely to shut down or delete existing, operative websites, usernames, and accounts and immediately transfer the money currently residing in accounts within this Court's jurisdiction to foreign accounts located abroad that are not within this Court's jurisdiction. Further, the actual infringing merchandise will remain intact and within Defendants' possession, meaning that Defendants will likely open new websites and new accounts under different names or accounts to simply continue their counterfeit enterprises selling the same goods. Based on conduct typically undertaken by online infringers such as Defendants, there is an overwhelming risk that Defendants will take quick, unilateral action upon learning of Ramona LaRue's lawsuit that will deprive Ramona LaRue of the remedies it seeks.

Ramona LaRue's well-pleaded factual allegations and evidence establish that issuing an *ex parte* temporary restraining order against Defendants is necessary and proper. There is no dispute that Ramona LaRue is the owner of the registered copyrights identified in the Complaint. Nor is there any doubt that Defendants' operations have used Plaintiff's copyrighted works. Issuance of an injunction on an *ex parte* basis is necessary to ensure that Defendants do not attempt to evade detection, destroy evidence, and undermine this Court's ability to order appropriate relief. Defendants' brazen illicit infringing activities should be restrained, and

therefore Ramona LaRue respectfully requests that this Court issue an *ex parte* temporary restraining order.

## II. STATEMENT OF FACTS

### A. Ramona LaRue's Copyrights

The Ramona LaRue products that are the subject of this Complaint are original, limited edition wearable works of art, personally designed and originally hand painted by the owner of Ramona LaRue, Arianne Brown. Each of Ms. Brown's paintings contain her signature and are digitally transferred on to high quality materials such as satin, crepe de chine, or chiffon, made into kaftans, dresses, and the like. Ms. Brown personally models each work of art, examples of which are shown in the Complaint and as attached to the Declaration of Ms. Brown.

Ramona LaRue has sold its products online since approximately 2009 on its website, www.ramonalarue.com. Ramona LaRue also owns and operates a Facebook page(https://www.facebook.com/ramonaruebyarianne/) which has over 6,000 followers, and Instagram account @ramonalarue (https://www.instagram.com/ramonalarue/?hl=en) which has over 42,000 followers (the "Social Media Accounts"). Both the Ramona LaRue website and Social Media Accounts feature proprietary content, including Plaintiff's copyrighted imagery, created and owned by Ramona LaRue for the purpose of marketing and selling its genuine Ramona LaRue merchandise to consumers.

The following chart lists the registered copyrights asserted by Ramona LaRue in this action (the "Ramona LaRue Copyrights"), the visual materials subject thereto are referred to as the "Copyrighted Material":

| Title | Status | Type | Registration Number | Date of Creation | Reg. Date |
|---|---|---|---|---|---|
| Ramona Larue 2018-2020 Misc. Published photos. [Group registration of | Registered | Visual Material | VA0002311820 | 2018 | 7/22/2022 |

| | | | | | |
|---|---|---|---|---|---|
| published photographs. 108 photographs. 2018-02-01 to 2018-12-30] | | | | | |
| Ramona Larue Riri Collection 2018 Published Photos. [Group registration of published photographs. 13 photographs. 2018-02-01 to 2018-02-28] | Registered | Visual Material | VA0002311821 | 2018 | 7/22/2022 |
| Ramona Larue May 2020 Published Photos. [Group registration of published photographs. 71 photographs. 2020-05-01 to 2020-12-31] | Registered | Visual Material | VA0002311884 | 2020 | 7/25/2022 |
| Ramona LaRue 2021 Published Photos. [Group registration of published photographs. 419 photographs. 2021-01-01 to 2021-12-31] | Registered | Visual Material | VA0002303096 | 2021 | 5/2/2022 |
| Ramona Larue Copyright 2021 Last Batch. [Group registration of published photographs. 217 photographs. 2021-06-01 to 2021-12-31] | Registered | Visual Material | VA0002313258 | 2021 | 7/29/2022 |
| Ramona Larue March 2021 Published Photos. [Group registration of published photographs. 59 photographs. 2021-03-01 to 2021-12-31] | Registered | Visual Material | VA0002311886 | 2021 | 7/25/2022 |
| Ramona Larue New Folder 2021. [Group registration of published photographs. 61 photographs. 2021-01-15 to 2021-08-31] | Registered | Visual Material | VA0002317270 | 2021 | 8/25/2022 |
| Ramona Larue 2022 Published Photos. [Group registration of published photographs. 403 photographs. 2022-01-01 to 2022-04-30] | Registered | Visual Material | VA0002298867 | 2022 | 5/4/2022 |
| Ramona Larue July 2022 Published Photos. [Group registration of published photographs. 51 photographs. 2022-07-01 to 2022-07-13] | Registered | Visual Material | VA0002311525 | 2022 | 7/13/2022 |
| Ramona Larue June 2022 Published Photos. [Group registration of published | Registered | Visual Material | VA0002307258 | 2022 | 6/30/2022 |

| |
|---|
| photographs. 120 photographs. 2022-06-01 to 2022-06-30] |

Attached to the Declaration of Arianne Brown as Exhibit 3 are true and correct copies of the copyright registrations along with representative deposit copies of the respective Copyrighted Material.

### B. Defendants' Illegal Activities

As detailed in the Complaint, Defendants seek to capitalize upon and exploit the Ramona LaRue intellectual property, and the recognition of that intellectual property among consumers. Specifically, Defendants offer to sell and sell infringing goods in connection with the Ramona LaRue Copyrighted Material to consumers in the United States through the operation of interactive, online websites and marketplaces on various platforms such as eBay, Shopify, AliExpress, and Alibaba by displaying the infringing imagery. Complaint at ¶ 23-30. The listings display prices in US dollars and offer shipment to U.S. addresses. Defendants intentionally mislead consumers by creating electronic storefronts that appear as authorized online retailers offering the bona fide products, when in reality, the product being sold is not. *Id.*. Defendants use the Ramona LaRue Copyrighted Material on these product listings in an effort to deceive consumers into thinking the products emanate from Ramona LaRue. *Id.*

Based on Ramona LaRue's investigation, Defendants operate websites and online marketplaces in a manner that conceals the Defendants identities through the use of fictitious usernames and identifying information. *Id.* at ¶¶ 28-29. Although many of the Defendants can only be identified by their website addresses, account pseudonyms, and other limited publicly available information at present, Ramona LaRue will voluntarily amend its Complaint if Defendants provide additional credible information regarding their identities.

## III. JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District. Each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, by offering online sales via one or more interactive, commercial websites, identified in Annex A to the Complaint. Each of the Defendants is committing tortious acts in Illinois by targeting Illinois residents for its sales as evidenced by Defendants offering to ship to Illinois, accepting payment in U.S. dollars, and selling infringing products using Ramona LaRue's Copyrighted Material to Illinois residents. *See* Complaint at ¶¶ 4-5. Without the benefit of an evidentiary hearing, a plaintiff bears only the burden of alleging a *prima facie* case for personal jurisdiction; all of a plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010).

## IV. ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. The entry of a temporary restraining order is appropriate because it would immediately stop Defendants from benefiting from their wrongful use of the Ramona LaRue Copyrighted Material, prevent Defendants from thwarting the ability of Ramona LaRue to obtain the equitable relief it seeks, and preserve the status quo until such time as a full hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will delete their current websites and online marketplace accounts in order to circumvent Ramona LaRue's ability to gain meaningful relief. Declaration of Kelley S. Gordon at ¶ 10. For example, sellers of infringing merchandise monitor websites such as *sellerdefense.cn* which warns sellers that a copyright infringement complaint has been filed in connection with the product that they are selling. The warnings are usually posted on *sellerdefense.cn* within days of the Complaint being filed. *Id.* at ¶ 11. As a result, Defendants transfer any money in U.S. accounts to foreign accounts outside of the jurisdiction of this Court, and simply start their counterfeiting activities anew with new fictitious identities selling the same counterfeit merchandise. *Id.* at ¶ 10-12. Moreover, Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted").

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). Accordingly, the moving party need only show that its case has some likelihood of success on the merits and that no adequate remedy at law exists. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Court may also consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in

equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach." The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896. The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in its favor. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

### B. Ramona LaRue will Likely Succeed on the Merits of its Claims

Ramona LaRue need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the court has characterized as a "low requirement." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1096 (7th Cir. 2008). Ramona LaRue will likely succeed on its copyright infringement claim. To prevail on a federal copyright claim, a plaintiff must prove (1) a valid copyright; and (2) illicit copying. *Feist Pub., Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991).

Here, both valid copyrights and illicit copying cannot be disputed (at least not in good faith). The copyrights asserted in the Complaint are federally registered and the corresponding certificates of registration constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410. The Copyrighted Material that is used without authorization by Defendants are accessible on either Ramona LaRue's website or on its social media accounts. The images used by Defendants are identical or nearly identical and indistinguishable copies of Ramona LaRue's Copyrighted Material some of which are even so brazen to show Ms. Brown's face in the imagery, or alternatively, knowingly remove inconsequential portions of the Copyrighted Material in a futile attempt to avoid detection and liability. Accordingly, Plaintiff establishes copying by showing that Defendants had access to

8

the images and the infringing material is substantially similar to the Copyrighted Material. *Francescatti v. Germanotta*, No. 11 CV 5270, 2014 WL 2767231, at *7 (N.D. Ill. June 17, 2014). The Copyrighted Material is used by Ramona LaRue in legitimate advertising and product listings for genuine Ramona LaRue products, and therefore the infringers use the Copyrighted Material in a bid to confuse consumers by including the images in its advertisements and product listings. Accordingly, Ramona LaRue has established a substantial likelihood of success on the merits of its copyright infringement claim.

### C. There Is No Adequate Remedy at Law and Ramona LaRue Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The essence of the injury in "copyright infringement is that the copyright owner is deprived of control over the use of the copyrighted material." *Igram v. Page*, 1999 WL 705895, at * (N.D. Ill. Aug. 27, 1999). Courts have also held that irreparable injury is evident where a defendant has "usurped" plaintiff's "creative control" by unlawfully licensing plaintiff's copyrighted work. *See Kinsey v. Jambow*, Ltd., 76 F. Supp. 3d 708, 710 (N.D. Ill. 2014) (finding irreparable injury where defendant licensed plaintiff's copyrighted work without authorization).

Ultimately, Defendants' unauthorized exploitation of the Ramona LaRue Copyrighted Material has irreparably harmed, and continues to irreparably harm, Ramona LaRue through the misappropriation of Ramona LaRue's ability to control the use of its Copyrighted Material. Further, because sellers utilize the Copyrighted Material with the sales of infringing products made to look like genuine Ramona LaRue products, Plaintiff is further harmed by being deprived of its ability to control the quality of goods sold in connection with its intellectual property, losing control over the reputation and goodwill that it has worked to establish among consumers. Brown Decl. at ¶¶ 27-29.

## D. The Balancing of Harms Tips in Ramona LaRue's Favor

The balancing of harms tips decidedly in Ramona LaRue's favor. In assessing the potential harm to Defendants, courts apply a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *See Gallery House, Inc. v. Yi*, 582 F. Supp.1294, 1298 (N.D. Ill. 1984) (the possibility that a defendant will lose profits "merits little equitable consideration"; and, an infringer has no "standing to complain that his vested interest will be disturbed").

In the absence of a temporary restraining order, Ramona LaRue would be harmed by having competing persons and entities offering what appear to be identical, but undoubtedly inferior products using the same Copyrighted Material. This would harm Ramona LaRue's business prospects, goodwill, and reputation. Defendants have no legitimate interest in selling products under or in connection with the Ramona LaRue Copyrighted Material. Unlike Ramona LaRue, Defendants are not at risk of damaging their reputation or goodwill because they trade under fictitious or ephemeral identities. To the extent Defendants would be harmed at all by an injunction (which is difficult to conceive insofar as the Defendants are engaged in unlawful infringing enterprises), that harm is far outweighed by the immeasurable damage to Ramona LaRue if Defendants were able to simply close their existing accounts and reopen new accounts, continuing to advance their counterfeit enterprises under new identities and websites, rendering Ramona LaRue's most significant remedies futile.

### E. Issuance of the Injunction Is in the Public Interest

Courts within this Circuit have upheld the importance of protecting copyrights. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1073 n. 11 (7th Cir. 1994) ("public policy strongly favors the protection of copyrights"). Further, the public has an interest in maintaining the protections provided by copyright law so that others are encouraged to create, knowing their works can be protected from infringers. *See Atari, Inc. v. North American Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (finding public interest is served by preserving integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights). Additionally, enforcing copyright laws encourages creative endeavors that benefit the public. *See In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002) (granting a preliminary injunction because "copyright laws embody a policy of encouraging creativity").

Here, the public's interest is best served by preventing consumer harm of purchasing illegitimate products of sub-standard quality. If Defendants are not enjoined, consumers interested in buying Plaintiff's bona fide Ramona LaRue product will be inevitably deceived into purchasing infringing and inferior product instead. As such, the issuance of such an order is in the public interest.

### F. Ramona LaRue Is Entitled to an *ex parte* Temporary Restraining Order Preventing the Creation, Advertising, Marketing, Offering for Sale, and Sale of Infringing Goods

#### 1. Issuance of Temporary Restraining Order

Ramona LaRue has demonstrated all elements required to establish the necessity of a preliminary injunction and temporary restraining order. An order compelling Defendants to cease their infringing activities is necessary to stop the harm currently being done to Ramona

11

LaRue and its Copyrighted Material, as well as the consumers who rely on the intellectual property to find Plaintiff's bona fide Ramona LaRue products.

As described above, if Defendants are given formal notice of Plaintiff's request for injunctive relief, they are the sorts of persons and entities who would likely hide, move, or destroy evidence. Declaration of Kelley S. Gordon at ¶¶ 10-12. *Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders of seizures . . . Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity"); see also *Deckers Outdoor Corp. v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (granting e*x parte* motion for TRO).

### 2. An Order Preventing the Fraudulent Transfer of Assets

Ramona LaRue requests an *ex parte* order restraining Defendants' assets so that Ramona LaRue's right to an equitable accounting of Defendants' profits from sales of infringing products is not impaired. If such an order is not issued in this case, Defendants will undoubtedly disregard their obligations and fraudulently transfer financial assets to overseas accounts before an order is issued. *Id.* at ¶¶ 10-12. Infringers frequently use false identities and transfer assets from U.S. accounts to foreign accounts in order to impede the efforts of brand owners to enforce their intellectual property rights, making it extremely difficult, if not impossible, for an intellectual property owner to prevent or seek a remedy for such wrongdoing. If Defendants were to hide or dispose of their assets upon learning of the litigation, an accounting by Ramona LaRue would be rendered meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 at *13 (N.D. Ill. Nov. 8, 2005). In addition, Ramona LaRue has shown a strong likelihood of success on the merits. Ramona LaRue's Complaint seeks, among other relief, that Defendants account for and pay to Ramona LaRue all profits realized by Defendants as a consequence of Defendants' infringing acts. Therefore, this Court has the inherent equitable authority to grant Ramona LaRue's request for a prejudgment asset freeze to preserve relief sought by Ramona LaRue and such an order is warranted in this case.

## V. RAMONA LARUE IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Under Federal Rules of Civil Procedure 26(b)(2), courts have broad power over discovery and are empowered to permit discovery in order to facilitate the identification of unknown defendants.

Ramona LaRue respectfully requests an *ex parte* order allowing expedited discovery as to the email addresses or other identifying information which Defendants use in connection with their marketplace accounts. Ramona LaRue also seeks expedited discovery with respect to the bank and payment system accounts Defendants use for their counterfeit operations. Discovery of these accounts is necessary so that they can be frozen ensuring that Defendants' counterfeiting activities are stopped. *See, e.g., Deckers Outdoor Corp. v. The Partnerships, et al.*, No. 15-cv-3249 (N.D.

13

Ill. April 4, 2015) (unpublished). Without this relief, Defendants will likely attempt to transfer their profits out of the United States and the jurisdiction of this Court. Accordingly, Ramona LaRue's suit may be rendered futile without the requested relief. The discovery requested on an expedited basis in Ramona LaRue's proposed temporary restraining order has been limited to include only what is essential to prevent further irreparable harm.

## VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary or permanent injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Due to the strong and unequivocal nature of Ramona LaRue's evidence of counterfeiting, infringement, and prior conduct seeking to thwart discovery, Ramona LaRue respectfully requests that this Court require Ramona LaRue to post a bond of no more than $10,000.00. *See, e.g., Incipio, LLC v. The Entities and Individuals Identified in Annex A,* No. 17-cv-08247 (N.D. Ill. Nov. 30, 2017) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond).

## VII. CONCLUSION

Defendants' ongoing infringement operations are causing irreparable injury to Ramona LaRue's business and confusion among consumers, who are deceived into purchasing infringing merchandise sold by Defendants. Ramona LaRue respectfully requests an *ex parte* temporary restraining order preventing Defendants from continuing to infringe the Ramona LaRue Copyrighted Material. Absent such relief, Defendants' ongoing infringement will continue to harm Ramona LaRue.

Dated this 4th day of November, 2022

Respectfully submitted,

Ramona LaRue, Inc.
/s/*Kelley S. Gordon*
Marshall, Gerstein & Borun LLP
Gregory J. Chinlund
Kelley S. Gordon
233 South Wacker Drive
6300 Willis Tower
Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Fax: (312) 474-7044
gchinlund@marshallip.com
kgordon@marshallip.com